**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JEREMY SMITH, individually and on behalf of all others similarly situated,**<br><br>                                        **Plaintiff,**<br><br>           v.<br><br>**ABC PEST CONTROL OF HOUSTON, INC. d/b/a ABC HOME & COMMERCIAL SERVICES and RALEIGH W. JENKINS,**<br><br>                                        **Defendants.** | **PLAINTIFFS' COLLECTIVE ACTION COMPLAINT**<br><br>**Case No. 1:20-cv-00008**<br><br>**Jury Trial Demanded** |

**ORIGINAL COMPLAINT**

Plaintiff Jeremy Smith, ("Plaintiff"), individually and on behalf of all others similarly situated as collective representatives, by their attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1. Defendant ABC Pest Control of Houston, Inc. d/b/a ABC Home & Commercial Services ("ABC Houston") provides pest and rodent control services to clients in commercial and residential properties. Defendant ABC Houston handled payroll from their Austin, Texas location.

2. Plaintiff worked for ABC Houston and all other Defendants as pest control technicians providing pest and rodent control and elimination services for residential and commercial properties.

3. Plaintiff bring this action on behalf of himself and similarly situated current and former pest control technicians who elect to opt in to this action pursuant to the FLSA, 29 U.S.C.

§§ 201, *et seq*., and specifically, its collective action provision, 29 U.S.C. § 216(b), for unpaid minimum wages and overtime.

4. Plaintiff worked nine to 14 hours per day, six days a week, often in extreme heat and/or while handling dangerous chemicals.

5. For example, to provide bed bug elimination services, Plaintiff Smith had to heat the structure receiving treatment to approximately 122 degrees Fahrenheit for up to nine consecutive hours.

6. On several occasions when ABC Houston's clients had not prepared the property to be heated for bed bug elimination services, Plaintiff Smith did not receive payment for the time he spent preparing and traveling to perform these services.

7. Plaintiff regularly worked in excess of 40 hours in a week.

8. Throughout the relevant period, it has been Defendants' policy to deprive Plaintiff and similarly situated pest control technicians of earned overtime wages. To avoid paying pest control technicians overtime premiums for hours they worked in excess of 40 in a workweek, Defendants uniformly misclassified them as exempt from federal overtime protections.

9. Plaintiff seek to compel Defendants to pay Plaintiff and a collective of similarly situated employees all of the wages they earned.

10. By the conduct described in this Collective Action Complaint, Defendants violated the FLSA by failing to pay its employees proper overtime compensation. These violations arose out of Defendants' company-wide policies and their pattern or practice of violating wage and hour laws.

11. Plaintiff bring individual and representative claims to remedy these violations. They bring their FLSA claims as a collective action, on their own behalf and on behalf of other

similarly situated employees, under 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision, 29 U.S.C. § 216(b).

## THE PARTIES

### Plaintiff

**Jeremy Smith**

12.     Plaintiff Jeremy Smith ("Smith") is an adult individual who resides in Magnolia, Texas.

13.     Smith's written Consent to Join form, pursuant to the FLSA, 29 U.S.C. § 216(b), is attached hereto as **Exhibit A**.

14.     Smith was employed by Defendants in Houston, Texas from approximately June 12, 2017 through August 17, 2018.

15.     Smith worked as a Termite and Rodent Technician from June 12, 2017 to August 7, 2017.

16.     Smith worked as a Bed Bugs Technician from August 8, 2017 to approximately March 24, 2018.

17.     Smith worked as a Residential Pest Control Technician from March 25, 2018 to August 17, 2018.

18.     Pursuant to Defendants' policy and pattern or practice, Smith did not receive the minimum wage for all hours worked, including time spent attending required department and company-wide meetings and preparing and traveling to perform bed bug elimination services when clients failed to properly prepare their properties for heating.

19.     Pursuant to Defendants' policy and pattern or practice, Smith regularly worked in excess of 40 hours in a workweek for Defendants' benefit without overtime compensation.

3

**Defendants**

20. Upon information and belief, Defendants ABC Pest Control of Houston, Inc. d/b/a ABC Home & Commercial Services and Raleigh Jenkins (together, "ABC") jointly and severally employed Plaintiff and similarly situated employees.

**ABC Pest Control of Houston, Inc. d/b/a ABC Home & Commercial Services**

21. Defendant ABC Pest Control of Houston, Inc. d/b/a/ ABC Home & Commercial Services ("ABC Houston") is a Texas for-profit corporation with its principal office located at 11934 Barker Cypress Road, Cypress, Texas 77433. Defendant may be served through its registered agent, Raleigh G. Jenkins, 11934 Barker Cypress, Texas 77433 or wherever it may be found.

22. ABC Houston provides pest and rodent control and elimination, among other services, to clients in residential and commercial properties.

23. Its customers are primarily located in the Greater Houston Metropolitan Area and surrounding rural areas and include residential homes, hospitals, schools, industrial settings such as airports, airplanes, refineries, chemical plants, churches, healthcare facilities, retirement homes, hotels, restaurants, convenience and grocery stores, and vehicles including buses and taxis, among other locations.

24. ABC Houston is part of a "family business" operating under the name's ABC Pest Control of Houston, Inc. and/or ABC Home & Commercial Services with locations throughout Texas, Florida, and Oklahoma.

25. The parents of Defendant Raleigh Jenkins started an ABC Home & Commercial Services branch in San Antonio, Texas in 1965.

26. Raleigh Jenkins owns ABC Houston. His brother Robert W. Jenkins Jr. owns an ABC Home & Commercial Services location in Austin, among others. Raleigh Jenkin's other

brother, Dennis Jenkins, owns an ABC Home & Commercial Services location in Dallas, among others.

27. Plaintiff work on behalf of ABC Houston in and around Texas.

28. Together with Raleigh Jenkins, ABC Houston maintained control, oversight, and direction over Plaintiff's work, including control over payroll and other terms and conditions of Plaintiff's employment.

29. Upon information and belief, ABC Houston is a covered employer within the meaning of the FLSA.

30. Upon information and belief, ABC Houston's annual gross volume of sales made, or business done is not less than $500,000.

31. ABC Houston did not pay Plaintiff and the other pest control technicians the minimum wage for all hours worked, including time spent attending required department and company-wide meetings and preparing and traveling to perform bed bug elimination services when clients failed to properly prepare their properties for heating.

32. ABC Houston did not pay Plaintiff and other pest control technicians any compensation for their hours worked in excess of 40 per workweek.ABC Houston knew that it received a benefit from the labor of Plaintiff and similarly situated pest control technicians and should reasonably have expected to pay Plaintiff and the other pest control technicians for this benefit.

**Raleigh Jenkins**

33. Defendant Raleigh Jenkins ("Jenkins"), is an adult individual who resides at 9639 Louetta Road, Spring, Texas 77379.

34. Raleigh Jenkins is the President and a shareholder of ABC Houston.

35. Raleigh Jenkins has operational control over ABC Houston and is involved in its operations on a day-to-day basis.

36. Raleigh Jenkins is and has been an individual acting directly or indirectly in the interests of Defendants for purposes of 29 U.S.C. § 203(d).

37. Together with ABC Houston, Raleigh Jenkins jointly and severally employed Plaintiff and other pest control technicians.

38. Raleigh Jenkins controls and oversees ABC Houston's operations and possesses ultimate authority over ABC Houston's affairs.

39. Raleigh Jenkins' decisions directly affect the nature or conditions of pest control technicians' employment.

40. Raleigh Jenkins manages the company's finances, hires supervisors who directly manage the pest control technicians, and schedules and runs mandatory meetings on company policies and practices, such as driving safety and company costs, among other tasks.

41. ABC Houston did not pay Plaintiff and the other pest control technicians the minimum wage for all hours worked, including time spent attending required department and company-wide meetings and preparing and traveling to perform bed bug elimination services when clients failed to properly prepare their properties for heating.

42. Raleigh Jenkins did not pay Plaintiff and other pest control technicians overtime compensation for their hours worked in excess of 40 per workweek.

43. Raleigh Jenkins knew that he received a benefit from the labor of Plaintiff and similarly situated pest control technicians and should reasonably have expected to pay Plaintiff and the other pest control technicians for this benefit.

## JURISDICTION AND VENUE

44. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

45. In addition, the Court has jurisdiction over Plaintiff' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

46. The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

47. Upon information and belief, Defendants are subject to personal jurisdiction in Texas.

48. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

49. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas, and Defendants are subject to personal jurisdiction in the Western District of Texas.

50. The payroll department that handled the computation and issuance of payroll checks for the Plaintiff and General FLSA Collective are located in Austin, Texas.

## COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff bring FLSA claims, the First, Second, and Fourth Causes of Action, on behalf of themselves and all similarly situated persons:

> who have worked for Defendants ABC Pest Control of Houston, Inc. d/b/a ABC Home & Commercial Services and Raleigh Jenkins ("ABC") during a period of three years prior to the filing of this initial complaint and the date of final judgment in this matter in a non-supervisory capacity, who regularly performed pest and rodent control and elimination services on the premises of ABC's customers, including but not limited to Pest Control Technicians, Commercial Pest Control Technicians, Commercial Pest Specialists, Residential Pest Control Technicians, Termite/Rodent Technicians, Bed Bug Technicians, and Initial Residential Pest Control Technicians (the "General FLSA Collective").

52.     Plaintiff also brings FLSA claims, the Third Cause of Action, on behalf of himself and all similarly situated persons:

> who have worked for Defendants ABC Pest Control of Houston, Inc. d/b/a ABC Home & Commercial Services and Raleigh Jenkins ("ABC") during a period of three years prior to the filing of this initial complaint and the date of final judgment in this matter in a non-supervisory capacity, who regularly performed bed bug elimination services on the premises of ABC's customers, including but not limited to Bed Bug Technicians (the "Bed Bug Technician Preparation and Travel Claims Collective").

53.     All the work that Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff, the General FLSA Collective, and Bed Bug Technician Preparation and Travel Claims Collective have performed.

54.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective. This policy and pattern or practice includes, but is not limited to:

    a. Willfully misclassifying Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective as exempt from the overtime provisions of the FLSA;

    b. Willfully failing to pay Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective the minimum wage for all hours worked;

    c. Willfully failing to pay Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective overtime for hours that they worked in excess of 40 hours per workweek; and

  d. Willfully failing to record all of the time that Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective have worked for the benefit of ABC.

55. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the General FLSA Collective [1] the minimum wage for all hours worked.

56. Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the General FLSA Collective the minimum wage for all hours worked, including time spent attending required department and company-wide meetings.

57. Defendants are aware or should have been aware that federal law required them to pay the Bed Bug Technician Preparation and Travel Claims Collective for time spent preparing and traveling to perform bed bug elimination services when clients failed to properly prepare their properties for heating.

58. Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the General FLSA Collective an overtime premium for hours worked in excess of 40 per workweek.

59. Defendants' conduct has been widespread, repeated, and consistent.

60. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the General FLSA Collective and the Bed Bug Preparation and Travel Claims Collective pursuant to 29 U.S.C.

§ 216(b).

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Smith

61.     Defendants employed Smith as a pest control technician.

62.     Smith's primary job duties were performing pest and rodent control and elimination services on commercial and residential buildings on ABC Houston's customers' premises.

63.     Defendants assigned Smith a route of customers' premises on which to perform specific pest control services.

64.     Defendants did not pay Smith bona fide commissions on goods and services for more than half his compensation for a representative period of not less than one month.

65.     Smith never performed sales for Defendants or made contracts for their services. In fact, Defendants prohibited Smith from negotiating the prices of the services that he performed for clients.

66.     When a client had an issue, requested additional services, and/or required an adjustment to the amount for which they were to be charged, Defendants required Smith to call its designated sales team, which had the authority to modify the charged amount.

67.     Defendants were supposed to pay Smith compensation a commissions based the amount of compensation on a percentage of the cost of the service he provided to its customers. The percentage varied based on the licenses and certifications that he possessed and the types of services that he performed.

68.     For example, when Smith was in training and worked as a Termite/Rodent technician, he was supposed to have received a 16 percent "commission" because he had his apprentice license, which allowed him to receive a 14 percent "commission," and a Whitemiere

Court certification, which allowed him to receive a two percent "commission."

69. After Smith received his license in pest and termite control, Smith was supposed to make 19 percent of the cost of the services he provided on termite/rodent elimination services.

70. From about August 2017 to approximately January 2018, Smith was supposed to received 11 percent of the cost of the bed bug elimination jobs he performed.[2]

71. In or about January 2018, Smith was supposed to start receiving a commission of 12 percent of the cost of the bed bug elimination jobs that he performed.

72. For bed bug elimination jobs, Plaintiff Smith had to heat the structure receiving treatment to approximately 122 degrees Fahrenheit for approximately 5 to 9 consecutive hours.

73. If Smith had to perform a "reheat," he was supposed to receive a 4 percent commission.

74. Approximately 5 times a week, Defendant did not pay Smith when they assigned him to re-treat a property that he or another pest control technician had previously treated unsuccessfully.

75. On approximately six occasions where Defendants' clients had not prepared the property to be heated for bed bug elimination services, Plaintiff Smith did not receive payment for the time he spent preparing and traveling to perform these services.

76. When Smith worked as a Residential Pest Control Technician, Defendants were supposed to have paid him 17 percent of the cost of the services he provided.

77. Defendants required Smith to attend hour-long department meetings that typically took place every week on either Tuesday or Wednesday. Up to twice a month, Defendants also

required Smith to attend an hour-long company-wide meeting. Defendants did not pay Smith for the time he spent attending these meetings.

78. Defendants regularly made unlawful deductions from Smith's paychecks for reasons including, but not limited to, uniform laundering and fuel covering the cost of travel from Smith's home to ABC Houston's office for required meetings.

79. Smith typically worked 60 to 80 hours a workweek.

80. Pursuant to Defendants' policy and pattern or practice, Defendants classified Smith as exempt from overtime pay requirements and willfully failed to pay him a proper overtime premium for hours he worked for Defendants' benefit in excess of 40 hours per workweek.

81. Defendants failed to keep accurate records of Smith's hours worked.

82. Upon information and belief, Defendants made so many unilateral changes to the pay structure each pay cycle that there was no discernible relationship between the amount charged to the customer and the amount paid to the Plaintiff and General FLSA Collective. By making unexplained, unilateral deductions, paying zero commission, and making various adjustments to the payroll the Defendants unlinked the compensation they paid to Plaintiff and General FLSA Collective and the percentage of the price charged to the customer for the service sold.

83. Upon information and belief, Defendants used their payroll personnel and office located in Austin, Texas to conduct the computation of earnings and to issue payroll checks to the Plaintiff and General FLSA Collective.

84. As a result, the personnel and records involved in the payroll are located in Austin, Texas.

85. Plaintiff Smith did not have control over his assigned route of locations on which to provide pest control services and thus did not have control over the amount of commissions that

he made.

86. In weeks in which Smith and other pest control technicians did not receive bona fide commissions, Defendants were required to pay Smith, and other pest control technicians overtime wages in those weeks.

87. Defendants failed to pay Smith, and other pest control technicians overtime wages in the weeks in which Defendants did not meet the criteria of the applicable exemption.

88. Plaintiff Smith is aware of other current and former employees of Defendants who were subject to these same wage-and-hour practices.

89. Upon information and belief, Defendants applied these payroll policies and practices company wide.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the General FLSA Collective)**

90. Plaintiff, on behalf of himself and the General FLSA Collective reallege and incorporate by reference all allegations in all preceding paragraphs.

91. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Collective Action Complaint.

92. At all times relevant, Plaintiff and the General FLSA Collective were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

93. Defendants were required to pay directly to Plaintiff and the General FLSA Collective the applicable minimum wage rates for all hours worked.

94. Defendants failed to pay Plaintiff and the General FLSA Collective the applicable minimum wage rates for all hours worked.

95. Defendants' violations of the FLSA, as described in this Collective Action

Complaint, have been willful and intentional.

96. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the General FLSA Collective.

97. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

98. As a result of Defendants' violations of the FLSA, Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective have suffered damages by being denied wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Wages for Meetings**
**(Brought on behalf of Plaintiff and the General FLSA Collective)**

99. Plaintiff, on behalf of himself and the General FLSA Collective reallege and incorporate by reference all allegations in all preceding paragraphs.

100. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Collective Action Complaint.

101. At all times relevant, Plaintiff and the General FLSA Collective were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

102. Defendants were required to pay directly to Plaintiff and the General FLSA Collective the applicable minimum wage rates for all hours worked.

103. Defendants did not pay Plaintiff and the General FLSA Collective for their time spent traveling to and attending mandatory meetings.

104. Defendants' violations of the FLSA, as described in this Collective Action

Complaint, have been willful and intentional.

105. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the General FLSA Collective.

106. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

107. As a result of Defendants' violations of the FLSA, Plaintiff, the General FLSA Collective, and the Bed Bug Technician Preparation and Travel Claims Collective have suffered damages by being denied wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

### THIRD CAUSE OF ACTION
**Fair Labor Standards Act – Unpaid Wages for Bed Bug Technicians**
**(Brought on behalf of Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective)**

108. Plaintiff Smith, on behalf of himself and the Bed Bug Technician Preparation and Travel Claims Collective, reallege and incorporate by reference all allegations in all preceding paragraphs.

109. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Collective Action Complaint.

110. At all times relevant, Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

111. Defendants were required to pay directly to Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective the applicable minimum wage rates for all hours worked.

112. Defendants did not pay Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective for their time spent traveling to and then preparing to perform bed bug elimination services on unprepared properties that were not ready to be heated.

113. Defendants' violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional.

114. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective.

115. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

116. As a result of Defendants' violations of the FLSA, Plaintiff Smith and the Bed Bug Technician Preparation and Travel Claims Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

### FOURTH CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the General FLSA Collective)**

117. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

118. Defendants engaged in a widespread pattern, policy, and practice of violating the

FLSA, as detailed in this Collective Action Complaint.

119. At all times relevant, Plaintiff and the General FLSA Collective were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

120. The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiff and the General FLSA Collective.

121. At all times relevant, Plaintiff and the General FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

122. Defendants employed Plaintiff and the General FLSA Collective as employers within the meaning of the Fair Labor Standards Act ("FLSA"), 9 U.S.C. §§ 201, *et seq*. and 29 CFR § 791.2.

123. Defendants failed to pay Plaintiff and the General FLSA Collective the overtime wages to which they are entitled under the FLSA.

124. Defendants failed to keep accurate records of time worked by Plaintiff and the General FLSA Collective.

125. Defendants' violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional.

126. Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the General FLSA Collective.

127. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

128. As a result of Defendants' violations of the FLSA, Plaintiff and the General FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated

damages, interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, pray for the following relief:

129. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action and that Defendants provide Plaintiff with names, addresses, telephone numbers, and other contact information, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit been employed by Defendants and who fall within the General FLSA Collective and Bed Bug Technician Preparation and Travel Claims Collective described in this Collective Action Complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages; and

130. Unpaid wages, including the minimum wage and overtime wages;

131. An additional 100 percent as liquidated damages under the FLSA;

132. Designation of Plaintiff as Collective Representatives;

133. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

134. Appropriate equitable and injunctive relief to remedy Defendants' violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

135. Pre-Judgment and Post-Judgment interest, as provided by law;

136. Such other injunctive and equitable relief as the Court may deem just and proper;

137.    Reasonable incentive awards for each named Plaintiff to compensate them for the time they spent attempting to recover wages for similarly situated pest control technicians employed by Defendants and the risk they took in doing so; and

138.    Attorneys' fees and costs, including expert fees.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

TRAN LAW FIRM

/s/Trang Q. Tran
Trang Q. Tran
Federal I.D: 20361
Texas Bar No. 00795787
2537 South Gessner Road, Suite 104
Houston, Texas 77063
Tel: (713) 223 – 8855
Fax: (713) 623 – 6399
ttran@tranlawllp.com
service@tranlawll.com

**ATTORNEY FOR PLAINTIFF**